UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

NOV 1 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

Plaintiff,

v.

VULCAN MATERIALS COMPANY and
FLORIDA ROCK INDUSTRIES, INC.,

Defendants.

CASE NO.: 07-2044

JUDGE:

DECK TYPE:  Antitrust

DATE STAMP:

## HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to

approval and entry by the Court, that:

## I. DEFINITIONS

As used in this Hold Separate Stipulation and Order:

A.    "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest

some or all of the Divestiture Assets.

B.    "Coarse aggregate" means crushed stone produced at quarries or mines and used

for, among other things, road base and the production of ready mix concrete and asphalt.

C.    "Divestiture Assets" means:

1.    the following quarries and yard:

a.    the Florida Rock Six Mile quarry, located at 3785 Cave Springs

Road, Cedarton, Georgia;

b.    the Florida Rock Paulding quarry, located at 112 Quarry Road,

Yorkville, Georgia;

c.    the Florida Rock Tyrone quarry, located at 240 Rockwood Road, Tyrone, Georgia;

d.    the Vulcan Red Oak quarry, located at 5414 Buffington Road, Red Oak, Georgia;

e.    the Vulcan quarry under development in Butts County, located on Greer Dairy Road, Jackson, Georgia;

f.    the Florida Rock interest in Columbus Quarry, LLC, which owns the Columbus quarry, located at 3001 Smith Road, Columbus, Georgia;

g.    the Florida Rock Jersey Pike quarry, located at 2 Pelican Drive, Chattanooga, Tennessee;

h.    the Florida Rock Richmond quarry, located at 2100 Deepwater Terminal Road, Richmond, Virginia (but excluding the Florida Rock ready mix concrete plant, the real property necessary for the operation of the plant (provided the conveyance of such property does not interfere with the operation of the Richmond quarry), and all other tangible and intangible assets exclusively used in the plant's operations) and, at the option of the Acquirer, use of the real property, parking lot, equipment shop, and office building equivalent to that which Florida Rock currently has for its quarry operations; and

2

i.    the Florida Rock Gilmerton yard, located at 4606 Bainbridge

Boulevard, Chesapeake, Virginia (but excluding the Florida Rock

ready mix concrete plant, the real property necessary for the

operation of the plant (provided the conveyance of such property

does not interfere with the operation of the Gilmerton yard), and all

other tangible and intangible assets exclusively used in the plant's

operations) and, at the option of the Acquirer, use of the real

property, parking lot, equipment shop, fuel station, and office

building equivalent to that which Florida Rock currently has for its

operation of the yard;

2.    all tangible assets used in or for the quarries and yard listed in Paragraphs

I(C)(1)(a) through (i), including but not limited to all research and

development activities (except for any such research and development

activities that are principally devoted to either defendant's operations as a

whole and not specifically to the operations of the quarries and yard listed

in Paragraphs I(C)(1)(a) through (i), and that are not necessary to the

operation of the quarries and yard listed in Paragraphs I(C)(1)(a) through

(i)), equipment, tooling and fixed assets, real property (leased or owned),

personal property, inventory, coarse aggregate reserves, office furniture,

materials, supplies, on- or off-site warehouses or storage facilities relating

to the quarries and yard; all licenses, permits, and authorizations issued by

any governmental organization relating to the quarries and yard; all

3

contracts, teaming arrangements, agreements, leases (including renewal rights), commitments, certifications, and understandings relating to the quarries and yard, including sales agreements and supply agreements; all customer lists, contracts, accounts, and credit records relating to the quarries and yard; all repair and performance records and all other records relating to the quarries and yard; at the option of the Acquirer or Acquirers, a number of trucks, rail cars, and other vehicles usable at the quarries and yard listed in Paragraphs I(C)(1)(a) through (i) equal to, for each separate type of truck, rail car, or other vehicle, the average number of trucks, rail cars, and other vehicles of that type, owned or controlled by defendants, used at each such quarry or yard per month during the months of operation of the quarry or yard between January 1, 2006 and December 31, 2006 (calculated by averaging the number of trucks, rail cars, and other vehicles of each type, owned or controlled by defendants, that were used at each quarry or yard at any time during each month that the quarry or yard was in operation); and at the option of the Acquirer or Acquirers, a number of barges usable at the quarry and yard listed in Paragraphs I(C)(1)(h) and (i) equal to, for each separate type of barge, the average number of barges of that type, owned or controlled by defendants, used at such quarry or yard per month during the months of operation of the quarry or yard between January 1, 2006 and December 31, 2006 (calculated by averaging the number of barges of that type, owned or controlled by defendants, that

4

were used at such quarry or yard at any time during each month that the quarry or yard was in operation); and

3.     all intangible assets used in the development, production, servicing, distribution, and sale of products produced by or in the quarries or stored in the yard listed in Paragraphs I(C)(1)(a) through (i), including but not limited to all contractual rights (except for any such contractual rights that are principally devoted to either defendant's operations as a whole and not specifically to the operations of the quarries and yard listed in Paragraphs I(C)(1)(a) through (i), and that are not necessary to the operation of the quarries and yard listed in Paragraphs I(C)(1)(a) through (i)), patents, licenses and sub-licenses, intellectual property rights, copyrights, trademarks, trade names, service marks, service names, technical information, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, quality assurance and control procedures, all manuals and technical information defendants provide to their own employees, customers, suppliers, agents, or licensees, and all research data (including coarse aggregate reserve testing information) concerning historic and current research and development efforts relating to the quarries and yard, including but not limited to designs of experiments and the results of successful and unsuccessful designs and experiments. Notwithstanding

5

anything to the contrary in the Final Judgment, if requested by an
Acquirer, and subject to approval by the United States in its sole
discretion, defendants shall offer to enter into a transition services
agreement with respect to computer software (including dispatch software
and management information systems) and related documentation, and
design tools and simulation capability.

D.     "Florida Rock" means defendant Florida Rock Industries, Inc., a Florida
corporation with its headquarters in Jacksonville, Florida, its successors and assigns, and its
subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors,
officers, managers, agents, and employees.

E.     "Vulcan" means defendant Vulcan Materials Company, a New Jersey corporation
with its headquarters in Birmingham, Alabama, its successors and assigns, and its subsidiaries,
divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers,
managers, agents, and employees.

## II.  OBJECTIVES

The proposed Final Judgment filed in this case is meant to ensure defendants' prompt
divestiture of the Divestiture Assets, for the purpose of maintaining competition in the
production, distribution, and sale of coarse aggregate in certain areas of Georgia, Tennessee, and
Virginia in order to remedy the effects that the United States alleges would otherwise result from
Vulcan's acquisition of Florida Rock.  This Hold Separate Stipulation and Order ensures that,
prior to such divestitures, the Divestiture Assets remain independent, economically viable, and
ongoing business concerns that will remain independent and uninfluenced by Vulcan's

6

acquisition of Florida Rock, and that competition is maintained during the pendency of the
ordered divestitures.

## III. JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action and defendants do not
object either to the Court's exercise of personal jurisdiction in this case or to the propriety of
venue of this action in the United States District Court for the District of Columbia.

## IV. COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A.      The parties stipulate that a Final Judgment in the form attached hereto as Exhibit
A may be filed with and entered by the Court, upon the motion of any party or upon the Court's
own motion, at any time after compliance with the requirements of the Antitrust Procedures and
Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or other
proceedings, provided that the United States has not withdrawn its consent, which it may do at
any time before the entry of the proposed Final Judgment by serving notice thereof on defendants
and by filing that notice with the Court.

B.      Defendants shall abide by and comply with the provisions of the proposed Final
Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals
of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of
the signing of this Hold Separate Stipulation and Order by the parties, comply with all the terms
and provisions of the proposed Final Judgment as though the same were in full force and effect
as an Order of the Court.

C.      Defendants shall not consummate the transaction sought to be enjoined by the
Complaint herein before the Court has signed this Hold Separate Stipulation and Order.

7

D.     This Hold Separate Stipulation and Order shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E.     In the event:  (1) the United States has withdrawn its consent, as provided in Paragraph IV(A); or (2) the proposed Final Judgment is not entered pursuant to this Hold Separate Stipulation and Order, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Hold Separate Stipulation and Order, and the making of this Hold Separate Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

F.     Defendants represent that the divestitures ordered in the proposed Final Judgment can and will be made and that defendants later will raise no claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V.  HOLD SEPARATE PROVISIONS

Until the divestitures required by the Final Judgment have been accomplished:

A.     Defendants shall preserve, maintain, and continue to operate the Divestiture Assets as independent, ongoing, economically viable competitive businesses, with management, sales, and operations of such assets held entirely separate, distinct, and apart from those of defendants' other operations.  Vulcan shall not coordinate its production, marketing, or terms of sale of any products with those produced by or sold under any of the Divestiture Assets.  Within twenty (20) days after the entry of this Hold Separate Stipulation and Order, defendants will

8

inform the United States of the steps defendants have taken to comply with this Hold Separate Stipulation and Order.

     B.    Defendants shall take all steps necessary to ensure that: (1) the Divestiture Assets will be maintained and operated as independent, ongoing, economically viable, and active competitors in the coarse aggregate business; (2) management of the Divestiture Assets will not be influenced by defendants; and (3) the books, records, competitively sensitive sales, marketing, and pricing information, and decision-making concerning the production, distribution, and sale of products produced by or sold under any of the Divestiture Assets will be kept separate and apart from defendants' other operations.

     C.    Defendants shall use all reasonable efforts to maintain and increase the sales and revenues of the products produced by or sold under the Divestiture Assets, and shall maintain at 2007 or previously approved levels for 2008, whichever are higher, all promotional, advertising, sales, technical assistance, marketing, and merchandising support for the Divestiture Assets.

     D.    Defendants shall provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Assets as economically viable and competitive, ongoing businesses, consistent with the requirements of Paragraphs V(A) and (B).

     E.    Defendants shall take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition at no less than their current capacity and sales and shall maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.

     F.    Defendants shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge, or otherwise dispose of any of the Divestiture Assets.

G.    Defendants shall maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books, and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.

H.    Defendants shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

I.    Defendants' employees involved in production, operations, distribution, and sales at the Divestiture Assets shall not be transferred or reassigned to other areas within the company except for transfer bids initiated by employees pursuant to defendants' regular, established job posting policy. Defendants shall provide the United States with ten (10) calendar days notice of such transfer.

J.    Defendants shall appoint a person or persons to oversee the Divestiture Assets, and who will be responsible for defendants' compliance with this Section. This person shall have complete managerial responsibility for the Divestiture Assets, subject to the provisions of the proposed Final Judgment. In the event such person is unable to perform his duties, defendants shall appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should defendants fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement.

K.    Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to complete the divestitures pursuant to the Final Judgment to an Acquirer or Acquirers acceptable to the United States.

10

L.    This Hold Separate Stipulation and Order shall remain in effect until:  (1) the

consummation of the divestitures required by the proposed Final Judgment; (2) further order of

the Court; or (3) the United States' voluntary dismissal of the Complaint in this matter.

Dated: November *13*, 2007

Respectfully submitted,

FOR PLAINTIFF
UNITED STATES OF AMERICA:

Robert W. Wilder, Esquire
United States Department of Justice
Antitrust Division, Litigation II Section
1401 H Street, NW, Suite 3000
Washington, D.C.  20530
(202) 307-6336

FOR DEFENDANT
VULCAN MATERIALS COMPANY:

Joseph D. Larson, Esquire
Wachtell, Lipton, Rosen & Katz LLP
51 West 52nd Street
New York, New York  10019
(212) 403-1000

FOR DEFENDANT
FLORIDA ROCK INDUSTRIES, INC.

Laura A. Wilkinson, Esquire
Weil, Gotshal & Manges LLP
1300 I Street, NW, Suite 900
Washington, D.C.  20005
(202) 682-7000
District of Columbia Bar Number 413497

ORDER

IT IS SO ORDERED by the Court, this ____ day of _____, 2007.

United States District Judge

11